UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY HOUSER,<br><br>            Plaintiff,<br><br>vs.<br><br>TOM CARTER, Sheriff,  Jail in Twin<br>Falls, Medical Department, and Nurse<br>Practitioner,<br><br>            Defendants. | Case No. 4:22-cv-00076-BLW<br><br>**MEMORANDUM DECISION**<br>**AND ORDER** |

Plaintiff Larry Houser filed a civil rights Complaint asserting that, while housed in the Twin Falls County Jail, he received improper care for his diabetes, which resulted in the unnecessary amputation of his left foot. Dkt. 2. He seeks millions of dollars in damages.

In the original Complaint, Plaintiff alleged that She riff Tom Carter and the Twin Falls County nurse practitioner are responsible for the improper medical treatment. Over one year ago, the Court notified Plaintiff that he would be required to (1) amend his Complaint to provide the actual name of the nurse practitioner before the amendment deadline, and (2) show that Sheriff Carter had supervisory personal participation in the alleged constitutional violation. Dkt. 9.

Plaintiff was also notified that he could not proceed against the entity defendants, but could amend his Complaint at a later date if he discovered that the alleged

**MEMORANDUM DECISION AND ORDER - 1**

constitutional violations were caused by entity policies or customs. *See Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139 (9th Cir. 2012) (*Monell* applicable to private entities performing government functions).[1]

Plaintiff was released on probation shortly after he filed his original Complaint, and he filed a notice of change of address on March 4, 2022. Dkt. 7. He has remained on probation during the pendency of this action.[2] *See* Dkt. 4. Therefore, the Court finds that he has had adequate time and opportunity to find counsel to represent him on a contingency or other basis in this matter.

In the Standard Disclosure and Discovery Order, the parties were ordered to exchange documents and information about the case. Dkts. 11, 12. The Standard Order is designed to help "level the playing field" between represented defendants and pro se prisoners in civil rights actions, because it requires the defendants to disclose a broad range of evidence possessed by government officials that may be relevant to the pro se plaintiff's case.

Defendant Tom Carter filed a Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment. Dkt. 24. Several days later, Plaintiff filed a "Second Amended Complaint." Dkt. 26. The Clerk of Court has provided Plaintiff with the Notice to Pro Se Litigants of the Summary Judgment Rule Requirements. Dkt.

---

[1] Plaintiff was specifically notified that, to state a claim against an entity, he would have to bring forward specific factual allegations about (1) what the jail and department policies were; (2) what the policy makers actually did, and (3) how the policies caused the medical providers to provide inadequate care.
[2] See https://www.idoc.idaho.gov/content/prisons/resident-client-search/details/71241.

**MEMORANDUM DECISION AND ORDER - 2**

25. Plaintiff has filed a Response to the Motion to Dismiss, as well as a Supplement.

Dkts. 28, 29. Sheriff Carter has filed a Reply. Dkt. 27.

## REVIEW OF SECOND COMPLAINT

The deadline for the filing of an amended complaint was January 30, 2023. *See*

Dkt. 9, p. 8 (Initial Review Order). On April 20, 2023, Plaintiff has filed a "Second

Complaint," which the Court construes as an amended complaint intended to replace the

original Complaint. Dkt. 26. He again named the same Defendants, but he did not

provided the name of the "nurse practitioner" Defendant. He states that he received

"inadequate care for a wound on left foot which ultimately ended in amputation, and that

Defendants did not follow "doctors orders." *Id*., p. 3.

Part of the Second Complaint is an unsigned "compensatory contract" that appears

to grant Daniel Webster, a prisoner or former prisoner who is not an attorney, *see* Dkt.

27, p. 2, the right to a portion of any proceeds Plaintiff receives in this case, in exchange

for Mr. Webster's "time, research, and acumen" related to his "aid in said action." Dkt.

26, p. 5. This is an improper insertion in the Second Complaint, and, as such, pages 5-6

will be stricken.

Plaintiff also makes various allegations challenging his conviction, including that

his trial was unfair trial, that he lacked proper representation, and that he is actually

innocent. He attaches various criminal action filings to his Second Complaint to support

his claims. The United States Supreme Court has made it clear that "when a state prisoner

is challenging the very fact or duration of his physical imprisonment, and the relief he

seeks is a determination that he is entitled to immediate release or a speedier release from

**MEMORANDUM DECISION AND ORDER - 3**

that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, Plaintiff cannot challenge the fairness of his criminal trial or raise a claim of innocence in this civil rights action.

Plaintiff asserts that, while in custody of the Twin Falls County Jail, he was granted an emergency furlough on December 18, 2021. On that date, he was admitted to St. Luke's Hospital. Defendants assert that this hospitalization was for sepsis, resulting from a left foot infection and diabetes. Plaintiff contrarily asserts that he did not have sepsis at this time and did not receive treatment at the hospital. But, Plaintiff, alleges, when he returned to the Twin Falls County Jail, he was left naked and barefoot in a holding cell before he was wrongfully sent to a jail in Blackfoot, Idaho, where a second infection caused by lack of medical care caused the amputation, performed on January 21, 2022. Dkt. 26, pp. 20-26.

Plaintiff attaches his responses to Sheriff Carter's interrogatories and requests for admission for the Court's review. In response to Request for Admission No. 18, asking Plaintiff to admit that Sheriff Carter and other Twin Falls Jail personnel did not cause any of the diagnosed conditions by action or inaction, Plaintiff answered: "Wasn't given medication as prescribed by doctor – was sent to BF [Blackfoot] without cause – which led to second infection and amp[utation] on 1-20-2022 at Bingham County in BF." Dkt. 26, p. 45 (parentheticals added).

In Plaintiff's Supplement, filed on July 19, 2023, he asserts that Twin Falls County Jail and Sheriff's Office staff are responsible for managing the medical care of persons housed in custody and provided unconstitutional care, as follows:

**MEMORANDUM DECISION AND ORDER - 4**

1. I didn't receive my insulin 27 units every day from my incarceration Oct 28, 2020 – April 13, 2022.

2. When given prescription of three times a day antibiotic jail staff gave me morning dose and then double dosed me at night.

3. I was sent to St. Luke's for an amputation Dec 18th, 2021 which wasn't necessary because I was healing until the jail put me naked in seclusion when I returned from the hospital and then sent me to Blackfoot 8 days before my jury trial that would have proven my innocence. Then because of the lack of Sheriff supervision I didn't receive proper medical care in Blackfoot which led to second infection and amputation while there in Bingham County.

4. Better management and communication between Sheriff and Jail Staff would have avoided this lack of proper treatment! Please review all evidence!

Dkt. 29, p. 2 (spelling regularized).

Even though the pleading and supplement were late, the Court will accept and review them for purposes of determining the pending dispositive motions.

## REVIEW OF MOTION TO DISMISS AND ALTNERATIVE MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court generally should not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not appended to) the complaint, where the authenticity of such a document is not in question. *Id*. at 622-23. A court may also take judicial notice of matters of its own records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records, such as records and reports of administrative bodies. *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

Summary judgment is appropriate where a party can show that, as to a claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that a material fact is not in dispute, a party may cite to particular parts of the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the

evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). At summary judgment, courts "do not focus on the admissibility of the evidence's form," but "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

Here, Plaintiff clarifies that his hospitalization and amputation occurred prior to trial. Therefore, the pretrial detainee standard will be applied in this case. The Fourteenth Amendment's Due Process Clause applies to pretrial detainees and is violated when the conditions to which the detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees have a due process right to adequate medical and mental health care while detained. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010). Convicted prisoners have a similar right under the Eighth Amendment, but that is not applicable here. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Detainees' conditions-of-confinement claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take

> reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

Although the Court uses an objective standard in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of confinement must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

The "respondeat superior" theory of liability against defendants—that a person is liable merely for being the supervisor of a tortfeasor—does not apply to federal civil rights claims. Rather, a person may be held liable as a supervisor under § 1983 if (1) he

**MEMORANDUM DECISION AND ORDER - 8**

or she had "personal involvement in the constitutional deprivation," or (2) "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" exists. *Starr v. Baca*, 652 F.3d  1202 (9th Cir. 2011) (punctuation altered and citation omitted). *See* also *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (there is no respondeat superior liability under §1983).

A plaintiff cannot maintain a claim against a defendant unless the plaintiff shows that the defendant personally participated in the alleged violation by bringing forward facts showing a causal connection. *See id*. For supervisors, that means any of the following: 1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Starr,* 652 F.3d at 1207-08 (punctuation altered and citation omitted).

### 2.  Discussion

Plaintiff alleges that Sheriff Tom Carter is responsible for the improper medical treatment that caused Plaintiff's amputation. He provides no allegations of how Sheriff Carter personally participated in the violation of his rights in his original Complaint or Second Complaint. In Plaintiff's Supplement, he alleges only that "because of the lack of Sheriff supervision," he didn't receive proper medical care, and "[b]etter management

**MEMORANDUM DECISION AND ORDER - 9**

and communication between Sheriff and Jail Staff would have avoided this lack of proper treatment!" Dkt. 29, p. 2.

However Plaintiff also asserts that, while on an emergency furlough after being in custody of the Twin Falls County Jail, he walked into St. Luke's hospital "perfectly fine," and he did not have sepsis or a need for treatment or an amputation. Dkt. 26, p. 20. These asserted facts make it clear that the medical care he received in Twin Falls County did not cause sepsis or his foot to be amputated.

Rather, he asserts that being placed in the holding cell in Twin Falls County Jail barefoot, and his subsequent lack of care in Bingham County, caused the left foot condition that required the amputation. *Id*. These allegations contained in the Supplement, even if the untimeliness is excused, are far too vague to show that Sheriff Carter had any knowledge of, or involvement in (1) Plaintiff's placement in a holding cell barefoot in the Twin Falls County Jail, or (2) anything that occurred in the Blackfoot Jail in Bingham County, where his left foot became infected to the degree that it required amputation.

Plaintiff has had adequate time and opportunity to come forward with facts showing personal participation of Sheriff Carter in the actions or inactions leading to Plaintiff's foot amputation, but has failed to do so. The Court agrees with Sheriff Carter that he is entitled to summary judgment on these claims for failure to show causation. These claims will be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 10**

## CLAIMS AGAINST "NURSE PRACTITIONER"

Defense counsel states that, when accepting service on behalf of Sheriff Carter, counsel informed Plaintiff that the nurse practitioner defendant was not an employee of Twin Falls County Jail. Dkt. 24-1, p. 3. As noted above, the Initial Review Order informed Plaintiff that he was required to amend his Complaint to provide the nurse practitioner's name if he desired to pursue a claim against that person. Plaintiff has not provided a name in his Second Complaint.

Nor has Plaintiff included any allegations linking his placement in a Twin Falls County Jail cell naked and barefoot or the amputation of his foot after receiving improper medical care in the Blackfoot facility to any action or inaction of any particular nurse practitioner working at the Twin Falls County Jail. In fact, as explained directly above, Plaintiff has alleged that his left foot was "perfectly fine" when released from the Twin Falls County Jail to seek care at St. Luke's Hospital, and it was not until he returned from the hospital and was placed barefoot in a holding cell and transferred to Bingham County that his foot became infected and had to be amputated. Because Plaintiff's allegations do not show that any medical care received at the Twin Falls County Jail caused his foot to become infected and be amputated during his custody in Bingham County, the claims against the Twin Falls County nurse practitioner are subject to dismissal for failure to state a claim upon which relief can be granted.

## ORDER

**IT IS ORDERED:**

1. Defendant Tom Carter's Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment (Dkt. 24), is GRANTED. The claims against Tom Carter are DISMISSED with prejudice.

2. The claims against the Twin Falls nurse practitioner are DISMISSED for failure to state a claim upon which relief can be granted.

3. Pages 5 and 6 of the Second Complaint (Dkt. 26) are STRICKEN.

DATED: October 23, 2023

B. Lynn Winmill
U.S. District Court Judge